# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### SEPTEMBER 9, 2010 Session

## JENNIFER BONNER GIVENS, ET AL. v. MARK S. JOSOVITZ, ET AL.

**Direct Appeal from the Circuit Court for Rutherford County**
**No. 54216     Royce Taylor, Judge**

---

**No. M2010-00071-COA-R3-CV - Filed November 9, 2010**

---

After an elevated PSA test in October 2000, Dr. Josovitz referred Decedent to a urologist. After an even higher PSA level on retest, the urologist performed a biopsy, which was benign. Despite being informed of his need for additional PSA testing, Decedent did not return to the urologist, and, despite routinely seeing Decedent for other health issues, Dr. Josovitz did not again discuss the need for repeat testing with Decedent until 2004. In May 2004, Decedent was diagnosed with advanced prostate cancer, and he died in September 2005.

Plaintiffs' expert testified that Decedent's prostate cancer must have been diagnosed by December 2001 in order for Decedent to survive. However, it is undisputed that the Defendants had no knowledge of his prostate cancer by that time. Plaintiffs filed suit in this case beyond the three-year statute of repose for medical malpractice. Because they are unable to prove Defendants had knowledge of Decedent's prostate cancer, fraudulent concealment is unavailable to toll the statute of repose. Accordingly, we find that Plaintiffs' wrongful death claim is barred by the statute of repose and further that Plaintiffs are not entitled to recover damages for pain and suffering. Summary judgment is granted to Defendants, and the trial court's dismissal of Plaintiffs' claim is affirmed.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. HIGHERS, P.J., W.S., delivered the opinion of the Court, in which DAVID R. FARMER, J., and J. STEVEN STAFFORD, J., joined.

William Kennerly Burger, Murfreesboro, Tennessee, for the appellants, Jennifer Bonner Givens, Donald Bonner, and Michelle Bonner

J. Eric Miles, Phillip North, Nashville, Tennessee, for the appellee, Mark S. Josovitz, M.D.

John T. Reese, E. Reynolds Davies, Jr., Nashville, Tennessee, for the appellee, Tanzania M. Dooley, M.D.

**OPINION**

### I. FACTS & PROCEDURAL HISTORY

Mark S. Josovitz, M.D., an internal medicine specialist, began seeing Dennis Bonner ("Decedent") in 1997. From 1997 through 2000, Decedent was seen for routine matters–colds and sore throats–and to address his issues with hypertension, morbid obesity, and type II diabetes. On August 21, 2000, Decedent complained of back pain and was experiencing abnormal urination. Decedent was seen again by Dr. Josovitz on August 23 and subsequently on September 8, when a PSA test was ordered. On October 3, 2000, Decedent's PSA level was reported at 10.96, which Ramon Velez, M.D., Plaintiffs' expert, claims is "highly suspicious for prostate cancer." Based on his PSA levels, as well as the results of a CT scan showing one kidney larger than the other, Dr. Josovitz referred Decedent to a urologist,[1] Robert Knight, M.D., and to a nephrologist,[2] Dr. Azabache.

On November 3, 2000, at Decedent's first visit with Dr. Knight, Dr. Knight examined Decedent's prostate and discussed with him what the elevated level could mean.[3] Decedent elected a repeat PSA test rather than a biopsy. In a November 6, 2000 letter to Dr. Josovitz, Dr. Knight confirmed that he had received the referral and that he would be handling Decedent's prostate problems. He further indicated that he would repeat the PSA test and, if elevated, perform a biopsy and prostate ultrasound. An early November 2000 repeat PSA test indicated an increased PSA level of 12. Thereafter, on January 12, 2001, a biopsy was performed with benign results.

Dr. Knight last saw Decedent on February 8, 2001. According to Dr. Knight, he intended to personally perform repeat PSA tests of Decedent, and he instructed Decedent to

---

[1]Urologists focus on medical illnesses, diseases, and surgery of the urinary tract and male genital tract.

[2]Nephrologists primarily treat medical diseases of the kidney.

[3]Dr. Knight, in his deposition, did not explain the possible prognoses discussed.

return for such testing.[4]  However, Decedent was non-compliant and never returned.  In an April 3, 2001 letter to Dr. Josovitz, Dr. Knight wrote in part:

> This is a follow-up on Dennis Bonner.  He had a prostate ultrasound and biopsy on 1-12-01 and this was negative.  Enclosed is a copy of this report. . . . I have had trouble contacting Mr. Bonner due to his being out of town a lot [sic]. . . . When I hear from him I will let you know.

According to Dr. Knight, this letter was not intended to discharge Decedent from Dr. Knight's care, but nothing in the record indicates that Decedent in fact remained under Dr. Knight's care beyond February 2001.

Following the PSA testing and biopsy, Dr. Josovitz routinely saw Decedent between May 2001 and February 2003 to follow-up on his hypertension, diabetes, and cholesterol. Blood work was often performed, but his PSA was not tested again during this time, nor is there any indication that Dr. Josovitz discussed with Decedent the "prostate issue" or any need for further testing.

In February 2003, internal medicine specialist Tanzania M. Dooley, M.D. temporarily took over the care of Dr. Josovitz's patients, including Decedent.  Dr. Dooley first saw Decedent on March 14, 2003, for complaints of left hand pain and swelling, and to address his hypertension and diabetes.  Dr. Dooley saw Decedent an additional six times through April 2004 for diabetes, hypertension, high cholesterol, and a skin infection.  During her care of Decedent, Dr. Dooley reviewed only his "current" medical chart, which began in 2003 and included no mention of prior elevated PSA levels.  At no time during her contact with Decedent did Decedent mention his early evaluations for urinary-type complaints, and Dr. Dooley never recommended a PSA test.

Dr. Josovitz returned to his practice in April 2004.  On April 21, 2004, Dr. Josovitz saw Decedent for complaints of "left flank pain."  Dr. Josovitz referred Decedent to another specialist due to concerns regarding renal function and elevated creantine.  Dr. Josovitz again saw Decedent on April 30, 2004, at which time blood was discovered in Decedent's urine. On May 3, 2004, Decedent was admitted to Middle Tennessee Medical Center, and a repeat PSA test was performed, indicating a reading of 2,400.  At that time,  Decedent was diagnosed with advanced prostate cancer.  A May 7, 2004 scan indicated that Decedent's

---

[4]According to Plaintiff's expert, it was unclear from the depositions and medical records he reviewed whether Dr. Knight or Dr. Josovitz was to perform the repeat PSA testing following the negative biopsy.  Of course, in considering a motion for summary judgment, we consider the evidence in the light most favorable to Plaintiffs.

cancer had spread from his prostate to his bones and kidneys. Decedent died on September 9, 2005.

Decedent filed the first complaint related to his prostate cancer on April 28, 2005, in the Rutherford County Circuit Court.[5] A voluntary non-suit was entered on September 20, 2005. The current suit was filed against Drs. Josovitz and Dooley ("Defendants") by Decedent's adult children, Jennifer Bonner Givens, Donald Bonner, and Michelle Bonner ("Plaintiffs"), on September 8, 2006, alleging the wrongful death of Decedent based on medical malpractice. Specifically, the complaint alleges that the Defendants owed Decedent a duty "to properly advise and treat the decedent at the early stage of his prostate cancer." Plaintiffs subsequently filed a motion to amend their complaint, seeking to correct a clerical error. Thereafter, on November 6, 2009, Dr. Josovitz filed a motion to dismiss which was adopted and joined by Dr. Dooley, claiming that Plaintiffs' wrongful death claim was barred by the three-year statute of repose, relying on Plaintiff's expert's testimony that Decedent more likely than not would have died had his prostate cancer been diagnosed after December 2001.

During a pre-trial conference, the trial court granted Plaintiffs' motion to amend their complaint and, considering the deposition of Plaintiffs' expert upon stipulation of the parties, granted Defendants' motion to dismiss. The trial court found that Plaintiffs' claims were barred by the statute of repose, as the fraudulent concealment exception was inapplicable to a case involving an alleged failure to diagnose. Plaintiffs appeal.

## II. ISSUES PRESENTED

Appellants presents the following issue for review, summarized as follows:

1. Whether the trial court erred in granting Defendants' motion to dismiss based upon the statute of repose.

Additionally, Dr. Dooley presents the following issue:

1. Whether Dr. Dooley's "Motion in Limine to Prevent the Plaintiffs' Expert's Standard of Care and Causation Testimony, to Dismiss and for Summary Judgment" and "Joint Motion in Limine to Exclude Testimony of the Plaintiffs' Expert," which were pretermitted by the trial court, should have been granted.

For the following reasons, we find that Plaintiffs' wrongful death claim is barred by the

[5]The original suit also named Dr. Knight as a defendant.

-4-

statute of repose and further that Plaintiffs are not entitled to recover damages for pain and suffering.  Summary judgment is granted to Defendants, and the trial court's dismissal of Plaintiffs' claim is affirmed.

## III.  STANDARD OF REVIEW

Because the trial court considered matters outside of the pleadings in conjunction with Defendants' Rule 12.02(6) motion to dismiss, the motion was converted into a motion for summary judgment.  **Tenn. R. Civ. P. 12.02**.  Accordingly, our review is pursuant to Rule 56.

Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law."  **Tenn. R. Civ. P. 56.04**.  Ruling on a motion for summary judgment does not involve disputed issues of fact, but only questions of law.  ***Owner-Operator Indep. Drivers Ass'n v. Concord EFS, Inc.,*** 59 S.W.3d 63, 68 (Tenn. 2001).  Thus, our standard for reviewing a grant of summary judgment is *de novo* with no presumption of correctness as to the trial court's findings.  ***See Webber v. State Farm Mut. Auto. Ins. Co.,*** 49 S.W.3d 265, 269 (Tenn.2001).  The evidence must be viewed "in the light most favorable to the nonmoving party," and all reasonable inferences must be drawn in the non-moving party's favor.  ***Staples v. CBL & Assocs.,*** 15 S.W.3d 83, 89 (Tenn. 2000).

Summary judgment is appropriate only when the moving party can show that there exists no genuine issue of material fact.  ***Hannan v. Alltel Publ'g Co.,*** 270 S.W.3d 1, 5 (Tenn. 2008) (citing Tenn. R. Civ. P. 56.04; *Byrd v. Hall,* 847 S.W.2d 208, 214 (Tenn.1993)).  To meet its initial burden, the moving party must either affirmatively negate an essential element of the nonmoving party's claim or establish an affirmative defense.  ***Id.*** (citing *Byrd,* 847 S.W.2d at 215 n.5).  If this initial burden of production is not satisfied, the motion for summary judgment should be dismissed.  ***Id.*** (citing *Byrd,* 847 S.W.2d at 215).  However, if the moving party meets its initial burden, the burden of production then shifts to the nonmoving party to show that a genuine issue of material fact exists.  ***Id.*** (citing *Byrd,* 847 S.W.2d at 215).

## IV.  DISCUSSION
### A.  Statute of Repose

Tennessee Code Annotated section 29-26-116 provides a one-year statute of limitation for medical malpractice claims, which "'commences to run when the patient discovers, or in

the exercise of reasonable care and diligence for his own health and welfare, should have discovered the resulting injury.'" **Benton v. Snyder**, 825 S.W.2d 409, 413 (Tenn. 1992) (quoting *Teeters v. Currey*, 518 S.W.2d 512, 517 (Tenn. 1974)). Section 29-26-116 also contains a statute of repose which provides:

> In no event shall any such action be brought more than three (3) years after the date on which the negligent act or omission occurred except where there is fraudulent concealment on the part of the defendant, in which case the action shall be commenced within one (1) year after discovery that the cause of action exists.

**Tenn. Code Ann. § 29-26-116(a)(3)**. The three-year statute of repose begins to run on the date of the allegedly negligent act, rather than upon discovery of the injury. **Benton**, 825 S.W.2d at 413 (citing *Braden v. Yoder*, 592 S.W.2d 896, 897 (Tenn. Ct. App. 1979)).

"This statute of repose for medical malpractice actions provides an almost absolute limitation on the time a plaintiff has to file his or her medical malpractice claim." **Tigrett v. Linn**, No. W2009-00205-COA-R9-CV, 2010 WL 1240745, at *4 (Tenn. Ct. App. Mar. 31, 2010) (citing *Calaway v. Schucker*, 193 S.W.3d 509, 515 (Tenn. 2005)). "The time of discovery of the injury, or the basis for the medical malpractice claim, is not relevant because the statute operates to bar an action based solely upon the date of the act or omission giving rise to the malpractice claim, regardless of when the action accrued." **Id.** (citing *Calaway*, 193 S.W.3d at 515). "Despite the harsh result that often ensues under the statute, our Supreme Court has held that, in enacting Tenn. Code Ann. § 29-26-116(a)(3), our Legislature intended 'to place an absolute three-year bar beyond which no medical malpractice right of action may survive.'" **Id.** (quoting *Mills v. Wong*, 155 S.W.3d 916, 920 (Tenn. 2005)).

In his deposition, Plaintiff's expert testified that if diagnosed after December 2001, Decedent's "survival would decrease dramatically to fifty percent or less." However, the original suit in this case was not filed until April 28, 2005. Thus, the parties agree that any claims relating to treatment rendered prior to April 28, 2002, are barred by the statute of repose unless the fraudulent concealment exception applies to toll the statute of repose set forth in Tennessee Code Annotated section 29-26-116(a)(3).

## B.    Fraudulent Concealment

At the outset, we must address Defendants' argument that Plaintiffs failed to sufficiently plead fraudulent concealment, and therefore, that we should not consider the issue on appeal.   Neither Plaintiffs' complaint nor their amended complaint alleged fraudulent concealment, but instead the issue was first raised by Plaintiffs in response to Defendants' motion to dismiss.  While we recognize that Tennessee Rule of Civil Procedure 9 requires fraud to be pled with particularity, because Plaintiffs raised the issue of fraudulent concealment in response to Defendants' motion to dismiss and because the trial court considered the claim before granting Defendants' motion, we will consider the issue on appeal.  ***See Durbin v. Sumner County Reg'l Health Sys., Inc.***, No. M2000-02109-COA-R3-CV, 2001 WL 1013071, at \*3 (Tenn. Ct. App. Sept. 6, 2001) *perm. app. denied* (Tenn. Feb. 11, 2002).

To utilize the fraudulent concealment exception to the three-year statute of repose, a plaintiff must prove:

> (1) the health care provider took affirmative action to conceal the wrongdoing or remained silent and failed to disclose material facts despite a duty to do so, (2) the plaintiff could not have discovered the wrong despite exercising reasonable care and diligence, (3) the health care provider knew of facts giving rise to the cause of action and, (4) a concealment, which may consist of the defendant withholding material information, making use of some device to mislead the plaintiff, or simply remaining silent and failing to disclose material facts when there was a duty to speak.

***Shadrick v. Coker***, 963 S.W.2d 726, 736 (Tenn. 1998).  Accordingly, to be entitled to summary judgment, Defendants must affirmatively negate one of the four required elements of fraudulent concealment.  In their respective briefs, Defendants contend that Plaintiffs cannot prove *any* of the elements of fraudulent concealment.

First, Defendants claim that Plaintiffs cannot demonstrate that they had actual knowledge "of facts giving rise to the cause of action[.]" ***See Tigrett***, 2010 WL 1240745, at \*4 (citing *Pero's Steak and Spaghetti House v. Lee*, 90 S.W.3d 614, 625 (Tenn. 2005)) ("Tennessee courts have clearly held that proof of *actual* knowledge of facts giving rise to the cause of action is required to establish fraudulent concealment.") (emphasis added). Plaintiff's expert testified that a PSA level of higher than four to five is considered abnormal,

and that a level greater than ten is "very, very suspicious for cancer . . . requir[ing] referral to a urologist for special testing, which would include biopsies." However, he acknowledged that "[t]here are some conditions that are not cancerous that will result in slight elevations of the PSA[,]" that a dramatic or sudden increase in PSA may not be indicative of cancer, and that even a high PSA reading may be due to a non-cancerous condition. Furthermore, he testified that a PSA test is not definitive for prostate cancer, and that "an abnormal PSA by itself does not equal cancer[.]"

As an essential element of his or her medical malpractice action, a plaintiff must prove that "[a]s a proximate result of the defendant's negligent act or omission, the plaintiff suffered injuries which would not otherwise have occurred." **Tenn. Code Ann. § 29-26-115(a)(3)**. Therefore, absent an injury, there can be no cause of action. Importantly, it is undisputed in this case that as of December 2001, when Decedent's life could have been saved, the Defendants had no knowledge of Decedent's prostate cancer. Because an elevated PSA level does not constitute injury, Defendants claim, it also does not constitute a cause of action. Thus, without knowledge of the cancer, itself, Defendants claim that Plaintiffs' fraudulent concealment theory must fail.

Simply put, this is a failure to diagnose case. "For the purposes of tolling the statute of repose, 'the failure to correctly diagnose an ailment cannot be the basis for fraudulent concealment claim unless the defendant had knowledge of the correct diagnosis.'" ***Tigrett***, 2010 WL 1240745, at *8 (quoting *Murphy v. Lakeside Med. Ctr., Inc.*, No. E2006-01721-COA-R3-CV, 2007 WL 906760 (Tenn. Ct. App. Mar. 26, 2007)). "One cannot conceal what one does not know." ***Id.*** (citing *Mayers v. Miller Med. Group*, No. 01-A-01-9802-CV-00101, 1998 WL 848095, at *4 (Tenn. Ct. App. Dec. 8, 1998)). "'[A]n honest mistake made by a physician in diagnosing the cause of a patient's infirmity standing alone, is not evidence of fraudulent concealment.'" ***Id.*** (quoting *Ray v. Scheibert*, 484 S.W.2d 63, 72 (Tenn. Ct. App. 1972)).

Based on their own admission, Plaintiffs are unable to prove Defendants' actual knowledge of Decedent's cause of action, his prostate cancer. Accordingly, we find that Defendants have successfully negated an essential element of Plaintiffs' fraudulent concealment claim–that Defendants knew of facts giving rise to the cause of action–and that Plaintiffs are unable to create a dispute of fact as to knowledge. Because fraudulent concealment cannot operate in this case to toll the statute of repose, we find that Plaintiffs' wrongful death claim is barred. ***See Cronin v. Howe***, 606 S.W.2d 910, 913 (Tenn. 1995). We need not reach Plaintiffs' arguments regarding the "concealment" element.

## C. Pain and Suffering

As we stated above, Plaintiffs concede that Defendants' conduct prior to April 28, 2002 is not actionable absent fraudulent concealment. However, on appeal, they attempt to argue that Defendants' post-2001, and presumably post-April 2002, failure to diagnose Decedent's prostate cancer led to increased pain and suffering.

Plaintiffs' brief, citing their complaint, states that "Plaintiffs' cause of action asserts damages resulting from: (2) the Defendants causing the decedent's death . . . ; and (b) a shortened life expectancy, with substantially enhanced pain and suffering." However, the record reveals that Plaintiffs' complaint states a single claim: "wrongful death based upon medical malpractice." Specifically, it alleges that Defendants failed "to properly advise and treat the decedent at the early stage of his cancer. . . . [and that] aggressive treatment during the critical intervening months between October, 2002 and May, 2004 would have enhanced the decedent's *life expectancy*, with a high probability of successful treatment for a form of cancer which is effectively treated with early and aggressive medical intervention." (emphasis added). This failure, the complaint maintains, "proximately and directly contributed to the *death* of the decedent, Dennis Bonner." (emphasis added). Furthermore, the complaint seeks only "compensatory damages for the wrongful death of Dennis Bonner . . . . [and] such further and general relief to which [Plaintiffs] may be entitled[.]" Plaintiffs' complaint does not contain the phrase "pain and suffering."

We reject Plaintiffs' argument that they are entitled to pain and suffering damages irrespective of the success of their wrongful death claim. Tennessee Code Annotated section 20-5-113, regarding wrongful death damages, provides as follows:

> Where a person's death is caused by the wrongful act, fault or omission of another and suit is brought for damages, as provided for by §§ 20-5-106 and 20-5-107, the party suing shall, *if entitled to damages*, have the right to recover for the mental and physical suffering, loss of time and necessary expenses resulting to the deceased from the personal injuries, and also the damages resulting to the parties for whose use and benefit the right of action survives from the death consequent upon the injuries received.

**Tenn. Code Ann. § 20-5-113** (emphasis added). Clearly, the statute simply sets forth the two classifications of damages available in *successful* wrongful death claims. Because Plaintiffs have stated a claim for wrongful death, alone, and that claim is barred by the statute

-9-

of repose, damages are unavailable.

Furthermore, Plaintiffs' claims of increased pain and suffering are unsupported by expert causation testimony. Plaintiffs' brief states that "[t]he testimony of Dr. Velez details the suffering encountered by Mr. Bonner as a result of the kidney failure, which probably would have been avoided (even though he may have eventually died from the prostate cancer) if palliative treatment had been commenced by either Josovitz or Dooley in the months preceding May 2004." However, the record shows Dr. Velez stated that had the cancer been discovered earlier, there "*may* have been some reduction in pain and suffering[,]" that Decedent "*might* not have had the renal failure" and that he "*might* have had a better quality of life during the remainder of his period of life." (emphasis added). Furthermore, when questioned regarding the impact of earlier identification upon Decedent's life, Dr. Velez responded that he felt uncomfortable giving opinions post-metastasis on the impact to a patient's life, instead deferring to a urologic oncologist. This issue is without merit.

## IV. CONCLUSION

For the aforementioned reasons, we find that Plaintiffs' wrongful death claim is barred by the statute of repose and further that Plaintiffs are not entitled to recover damages for pain and suffering. Summary judgment is granted to Defendants, and the trial court's dismissal of Plaintiffs' claim is affirmed. All remaining issues are pretermitted. Costs of this appeal are taxed to Appellants, Jennifer Bonner Givens, Donald Bonner, and Michelle Bonner, and their surety, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, P.J., W.S.

-10-