# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### February 19, 2013 Session

## FRANCESCA MARIA PIER v. KATHERINE JUNGKIND, ET AL.

**Direct Appeal from the Circuit Court for Shelby County**
**No. CT-005021-09      Robert S. Weiss, Judge**

---

**No. W2012-00872-COA-R3-CV - Filed April 8, 2013**

---

The trial court awarded Defendants summary judgment in this action for legal malpractice. We affirm based on expiry of the applicable statute of limitations.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded**

DAVID R. FARMER, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and J. STEVEN STAFFORD, J., joined.

Thomas D. Yeaglin, Memphis, Tennessee, for the appellant, Francesca Maria Pier.

Brian S. Faughnan, Memphis, Tennessee, for the appellee, Katherine Jungkind and Evans Petree, P.C.

Richard Glassman and Lacey Adair Bishop, Memphis, Tennessee, for the appellees, Wanda Shea, Mary Morgan Whitfield and Shea Moskovitz.

## OPINION

The facts relevant to our disposition on appeal of this legal malpractice action are not disputed. On April 3, 2007, Plaintiff Francesca Maria Pier (Ms. Pier) and Raymond Pier (Mr. Pier; collectively, "the Piers") entered a marital dissolution agreement ("MDA") in anticipation of divorce. The MDA provided, in relevant part, that Ms. Pier would receive one-half of Mr. Pier's Northwest Retirement Savings Plan ("the 401k"), fifty-five percent of the "marital portion" of Mr. Pier's entitlement in the defined benefit Northwest Airlines Pension Plan for Pilot Employees ("the pension plan"), and fifty-five percent of the "marital portion" of Mr. Pier's entitlement in a Prudential Preferred Live Fixed Dollar Annuity ("the annuity"). It further provided that the Piers "agree[d] to use Kitty Jungkind and/or Blake

Bourland . . . with the law firm of Evans and Petree to draft any and all Qualified Domestic Relations Orders necessary to effectuate the terms" of the MDA. On April 16, 2007, the Chancery Court for Shelby County entered a final decree of divorce awarding Ms. Pier a divorce on the grounds of irreconcilable differences, incorporating the Piers' agreed permanent parenting plan, and finding that the Piers had made adequate and sufficient provision for the equitable settlement of property rights in the MDA. The trial court incorporated the MDA into the final decree of divorce. Ms. Jungkind filed the Qualified Domestic Relations Orders ("QDROs") with the trial court on January 30, 2009. On June 9, 2009, an amended QDRO was entered for the pension plan.

On October 23, 2009, Ms. Pier, acting *pro se*, filed complaints alleging legal malpractice and breach of fiduciary duty against Katherine Jungkind (Ms. Jungkind), Evans Petree, Wanda Shea (Ms. Shea), Mary Morgan Whitfield (Ms. Whitfield) and Shea Moskovitz (collectively, "Defendants") in the Circuit Court for Shelby County. In her complaint, Ms. Pier asserted that Ms. Jungkind had negligently failed to act with the degree of competence generally possessed by attorneys in this State by a) failing to prepare the QDRO applicable to the 401k in accordance with the MDA; b) failing to prepare the three QDROs in a timely manner; c) failing to enter the QDRO applicable to the 401k "once the Plaintiff had signed and returned [it] to her immediately upon request, ignoring it for several months, after assuring the Plaintiff that it would be addressed immediately upon recite [sic]." Ms. Pier further alleged that her right to receive benefits from the pension plan had been "significantly delayed" as a result of the alleged failure by Ms. Jungkind to file the QDRO in a timely manner, and that she had sustained damages in the amount of $100,000 to $175,000 as a result of losses in the 401k. She prayed for compensatory damages in the amount of $800,000, pre-judgment and post-judgment interest, and costs. Ms. Pier asserted claims against Ms. Shea, who represented Ms. Pier in the divorce action and post divorce, for legal malpractice for failing to assure that the QDROs were prepared in a timely manner. In a separate complaint, she prayed for compensatory damages in the amount of $600,000, plus pre-judgment and post-judgment interest and costs. In her complaint against Ms. Whitfield, Ms. Pier similarly asserted claims for negligence and breach of fiduciary duty and prayed for compensatory damages in the amount of $600,000, plus pre-judgment and post-judgment interest and costs.

Defendants answered in December 2009, generally denying all allegations of wrong-doing. Defendants also asserted the affirmative defenses of the failure to state a claim upon which relief can be granted and the statute of limitations. They each further pled the comparative fault of the other Defendants and Ms. Pier.

Ms. Jungkind and Evans Petree (hereinafter, collectively, "the Evans Petree Defendants") filed a motion for summary judgment on January 12, 2010, asserting they were

entitled to a judgment as a matter of law and praying for entry of a final judgment pursuant to Rule 54.02 of the Tennessee Rules of Civil Procedure. In their accompanying memorandum, the Evans Petree Defendants asserted that Ms. Pier had failed to offer expert proof to support her allegations of malpractice. Ms. Jungkind also filed an expert affidavit asserting that she had complied with the applicable standard of professional care.

In February 2010, counsel for Ms. Pier entered a notice of appearance. Discovery ensued, but Ms. Pier failed to respond to the Evans Petree Defendants' motion for summary judgment and they filed a renewed motion on July 29, 2011. In their renewed motion, the Evans Petree Defendants asserted that Ms. Pier had not come forward with expert proof to support her claim and that the action was time-barred pursuant to the one-year statute of limitations. In support of their defense based on the statute of limitations, the Evans Petree Defendants asserted that Ms. Jungkind had circulated a draft of the QDROs on June 5, 2008, and that on June 12, 2008, Ms. Pier informed her of an ambiguity in the QDRO applicable to the 401k. They asserted that Ms. Jungkind contacted Northwest, obtained new sample language, made the appropriate revisions, and circulated the new draft to Ms. Pier on July 24, 2008. The Evans Petree Defendants asserted that the one-year statute of limitations began to run in June 2008, when Ms. Pier became aware that the QDROs had not been filed.

Ms. Whitfield, Ms. Shea, and Shea Moskovitz (collectively, "the Shea Moskovitz Defendants") filed a motion for summary judgment on February 4, 2010.[1] In their motion, the Shea Moskovitz Defendants asserted that Ms. Whitfield "was specifically instructed by Francesca Pier not to assist in the preparation of the QDROs" and that Ms. Pier had informed Ms. Whitfield that she had hired separate counsel to prepare the three QDROs. Ms. Whitfield also filed an expert affidavit asserting that she had complied with the recognized standard of care and that she was instructed by Ms. Pier not to assist in the preparation of the QDROs. Ms. Shea likewise filed an expert affidavit asserting that she had complied with the recognized standard of care, that Ms. Pier had informed her that she had hired separate counsel to prepare the QDROs, and that she was specifically instructed by Ms. Pier not to assist in the preparation of the QDROs.

In January 2012, Ms. Pier responded to Defendants' motions for summary judgment. On January 17, 2012, Ms. Pier filed the expert affidavit of attorney Larry C. Vaughan (Mr. Vaughan), in which Mr. Vaughan stated that, in his opinion, Ms. Jungkind's conduct fell below the standard of care where the QDROs were not finalized for twenty-eight months. Mr. Vaughan also opined that, if Ms. Shea was engaged to monitor preparation of the QDROs as Ms. Pier asserted, then Ms. Shea did not perform that function in accordance with

---

[1]The Shea Moskovitz Defendants note that the complaint incorrectly names Shea Moskovitz, and that the correct name of the Defendant is Shea, Moskovitz & McGee).

the standard of care.

Defendants' motions were heard by the trial court on January 20, 2012. By order entered March 12, 2012, the trial court awarded summary judgment to the Evans Petree Defendants based on the one-year statute of limitations provided by Tennessee Code Annotated § 28-3-104(a)(2). By order entered March 2, 2012, the trial court awarded summary judgment to the Shea Moskovitz Defendants. In its March 2012 order, the trial court stated that Ms. Pier had not made any allegations of negligence against Ms. Whitfield, and that Ms. Pier's expert also had not referenced Ms. Whitfield. The trial court further stated that Mr. Vaughan's statements with respect to Ms. Shea's responsibility to monitor preparation of the QDROs contradicted Ms. Pier's statement that she relied "solely" on Ms. Jungkind to prepare the QDROs. The trial court determined that Ms. Pier had failed to produce an expert affidavit that supported her allegations of negligence against Ms. Shea or Shea Moskovitz, and that summary judgment accordingly was appropriate. Ms. Pier filed a motion to alter or amend, which the trial court denied on April 18, 2012. Ms. Pier filed a timely notice of appeal to this Court.

### *Issues Presented*

The dispositive issues in this case, as we perceive them, are:

(1)     Whether the trial court erred by awarding summary judgment to Ms. Jungkind and Evans Petree based on the statute of limitations provided at Tennessee Code Annotated § 28-3-104.

(2)     Whether the trial court erred by awarding summary judgment to Ms. Whitfield, Ms. Shea, and Shea Moskovitz based on Ms. Pier's failure to submit expert proof of negligence.

### *Standard of Review*

Whether the applicable statute of limitations bars a claim is question of law. *Brown v. Erachem Comilog, Inc.*, 231 S.W.3d 918, 921 (Tenn. 2007)(citing *Owens v. Truckstops of Am.*, 915 S.W.2d 420, 424 (Tenn. 1996)). Our review of a trial court's determination of a question of law is *de novo*, with no presumption of correctness. *Id.* We likewise review a trial court's award of summary judgment *de novo*, with no presumption of correctness. When reviewing an award of summary judgment, we must consider the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 84 (Tenn. 2008) (citations omitted). Summary judgment is appropriate only where the "pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Id*. at 83 (quoting Tenn. R. Civ. P. 56.04; accord *Penley v. Honda Motor Co.*, 31 S.W.3d 181, 183 (Tenn. 2000)). The burden of persuasion is on the moving party to demonstrate, by a properly supported motion, that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *Id.* (citing *see Staples v. CBL & Assocs., Inc.*, 15 S.W.3d 83, 88 (Tenn. 2000); *McCarley v. W. Quality Food Serv.*, 960 S.W.2d 585, 588 (Tenn. 1998); *Byrd v. Hall*, 847 S.W.2d 208, 215 (Tenn. 1993)). A defendant moving for summary judgment on the basis of an affirmative defense shifts the burden of production to the nonmoving party by asserting undisputed facts that demonstrate the existence of that affirmative defense. *Riddle v. Carlton*, No. W2011–02145–COA–R3–CV, 2012 WL 1948870, at *2 (Tenn. Ct. App. May 31, 2012) (*no perm. app. filed*) (citing *Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1, 9 n.6 (Tenn. 2008)).

## *Discussion*

We turn first to whether the trial court erred by awarding summary judgment to the Evans Petree Defendants on the grounds that Ms. Pier commenced her action after the statute of limitations had expired. Tennessee Code Annotated § 28-3-104 provides that a malpractice action against an attorney must be commenced within one (1) year after the cause of action accrued. Tenn. Code Ann. § 28-3-104(a)(2)(2000). The discovery rule determines when a cause of action accrues. *PNC Multifamily Capital Inst'l Fund XXVI v. Bluff City Comty. Dev. Corp.*, 387 S.W.3d 525, 544 (Tenn. Ct. App. 2012). Under this rule, a plaintiff's cause of action accrues when he or she knows or, in the exercise of reasonable care and diligence should know, that he or she has sustained an injury as a result of the defendant's wrongful conduct. *Id.* (citing *Shadrick v. Coker*, 963 S.W.2d 726, 733 (Tenn. 1998); *Stanbury v. Bacardi*, 953 S.W.2d 671, 677 (Tenn. 1997)). The discovery rule applicable to legal malpractice actions includes two separate elements: 1) the plaintiff must suffer an "irremediable injury" as a result of the negligence of the defendant, and 2) the plaintiff must have known or, in the exercise of reasonable diligence should have known, that the defendant's negligent conduct caused the injury. *Carvell v. Bottoms*, 900 S.W.2d 23, 28 (Tenn. 1995) (citations omitted). The plaintiff in a legal malpractice action suffers an actual injury "when there is the loss of a legal right, remedy or interest, or the imposition of a liability." *John Kohl & Co. v. Dearborn & Ewing*, 977 S.W.2d 528, 532 (Tenn. 1998) (citation omitted). The actual injury also may occur when the plaintiff is forced to take some action or otherwise suffers "some actual inconvenience" as a result of the defendant's negligent act. *Id.* "[W]hen the injury, however slight, is complete at the time of the act, the statutory period then commences, but, when the act is not legally injurious until certain consequences occur, the time commences to run from the consequential damage. . . ." *Id.* (quoting *State v. McClellan*, 85 S.W. 267, 270 (Tenn. 1905)). Evidence of actual knowledge

or constructive knowledge of the injury may establish the knowledge component of the rule. *Id.* (citing *Carvell*, 900 S.W.2d at 29)). A plaintiff has constructive knowledge of an injury for the purpose of the statute of limitations when he "becomes aware or reasonably should have become aware of the facts sufficient to put a reasonable person on notice that an injury has been sustained as a result of the defendant's negligent or wrongful conduct." *Id.* (citing *id.*). The knowledge element does not require that the plaintiff know the "specific type of legal claim he or she has, or that the injury constituted a breach of the appropriate legal standard. *Id.* at 533 (citing *Shadrick*. 963 S.W.2d at 733). Rather, "'the plaintiff is deemed to have discovered the right of action if he is aware of facts sufficient to put a reasonable person on notice that he has suffered an injury as a result of wrongful conduct.'" *Id.*(quoting *Carvell*, 900 S.W.2d at 29 (quoting *Roe v. Jefferson*, 875 S.W.2d 653, 657 (Tenn.1994))). "'It is knowledge of facts sufficient to put a plaintiff on notice that an injury has been sustained which is crucial.'" *Id.* (quoting *Stanbury*, 953 S.W.2d at 678). Additionally, a plaintiff may not wait until he knows or suffers all "the injurious effects or consequences of the alleged wrong" before filing suit. *Id.* (citing *Shadrick*, 963 S.W.2d at 733; *Wyatt v. A–Best Co.*, 910 S.W.2d 851, 855 (Tenn. 1995)). Permitting a plaintiff to do so "would defeat the rationale for the existence of statutes of limitations, which is to avoid the uncertainties and burdens inherent in pursuing and defending stale claims." *Id.* (citing *Wyatt*, 910 S.W.2d at 855). Thus, the statute of limitations period begins to run when the plaintiff has suffered "a legally cognizable injury" caused by the attorney's negligence or wrongdoing, "and the client knows or should know the facts sufficient to give notice of that injury." *Cherry v. Williams*, 36 S.W.3d 78, 83 (Tenn. Ct. App. 2000)(citations omitted).

In this case, the conduct asserted by Ms. Pier to be negligent is Ms. Jungkind's failure to timely file the QDROs as provided in the Pier's MDA as incorporated into the April 2007 decree of divorce. Ms. Pier asserts that, as a result of the alleged negligence, she incurred the loss of annual income for two years from the pension fund, and losses resulting from decreases in the value of assets held in the 401k plan. It is undisputed in this case that Ms. Jungkind was retained to prepare and file the QDROs in April 2007. It also is undisputed that, by June 2008, more than one year after entry of the April 2007 decree, Ms. Pier had actual knowledge that the QDROs had not been filed, and that the QDROs were not filed with the trial court until January 2009. It also is undisputed that Ms. Pier did not file her complaint until October 2009. Thus, Ms. Pier filed her complaint more than sixteen months after she had actual knowledge that the QDROs had not been filed and more than a year after entry of the final decree of divorce in April 2007.

The essence of Ms. Pier's assertion of negligence is that the QDROs should have been prepared within a matter of weeks after entry of the decree of divorce in April 2007. It is undisputed that the QDROs were not filed in the trial court until January 2009, and that Ms. Pier had actual knowledge that they had not been prepared in June 2008, when Ms. Jungkind

circulated them for her review. Ms. Pier asserts in her brief, however, that her injury first occurred in late October 2008, "when the stock market began its dramatic and continuing plummet." She additionally asserts that she was entitled to receive approximately $40,000 per year from the pension plan, but that those monies could not be paid until the QDRO was finalized. Ms. Pier asserts that she did not suffer an injury until October 2008, when the stock market suffered dramatic losses, and that the statutory limitations period did not begin to run until that time. The Evans Petree Defendants, on the other hand, assert the statutory period began to run in June 2008, when Ms. Pier had actual knowledge that the QDROs had not been filed.

In light of the undisputed facts, we agree with the trial court that, although Ms. Pier may not have known the entirety of the "injurious effects or consequences" of her alleged injury, Ms. Pier was aware of sufficient facts to put a reasonable person on notice of the injury asserted in this matter. The injury complained of in this case is the loss of income and value resulting from the allegedly negligent delay in filing the QDROs which were necessary to complete the division of marital property agreed upon by the Piers in the 2007 MDA. Ms. Pier alleges the delay resulted in financial losses, including the loss of annual income from the pension plan for two years and the loss in value of assets held in the 401k.

Ms. Pier asserts in her brief that she could not have known that she had suffered any injury as a result of the delay in filing the QDROs until after she had access to the financial documentation relevant to the accounts. By June 2008, however, Ms. Pier had actual knowledge that she did not have access to or control of financial property awarded to her in the final decree of divorce in April 2007. She further had actual knowledge that the QDROs had not been filed, and, assuming her assertion that she lost income for two years in the amount of approximately $40,000 per year from the pension plan to be true, actual knowledge of loss of income from the plan from April 2007 to June 2008. Thus, viewing the facts in a light most favorable to Ms. Pier, although she did not have knowledge of the full extent of her alleged injuries, Ms. Pier was on notice that she had incurred some injury. We accordingly affirm summary judgment in favor of the Evans Petree Defendants on the basis of the statute of limitations.

We turn next to whether the trial court erred by awarding summary judgment to the Shea Moskovitz Defendants. Ms. Pier's argument with respect to the actions of Ms. Whitfield and Ms. Shea, as we perceive it, is that they negligently failed to monitor Ms. Jungkind's preparation of the QDROs to ensure that the documents were prepared in a timely fashion. The trial court awarded summary judgment to Ms. Whitfield on the basis that Mr. Vaughan, Ms. Pier's expert, made no reference to Ms. Whitfield in his affidavit and that there was no evidence in the record to support a cause of action against her. Upon review of the affidavit of Mr. Vaughan contained in the record, we agree with the trial court that he

references no conduct on the part of Ms. Whitfield. We accordingly affirm the trial court's award of summary judgment with respect to Ms. Whitfield based on the lack of expert proof.

With respect to Ms. Shea, the trial court determined that Ms. Pier's statements were contradictory where she stated, on one hand, that she relied "solely" on Ms. Jungkind to prepare the QDROs and, on the other hand, that she relied on Ms. Shea to monitor the document preparation. The trial court determined that Mr. Vaughan's affidavit was not "sufficient to refute" Ms. Shea's affidavit. Thus, the trial court apparently awarded summary judgment to Ms. Shea based on its assessment of the comparative weight of the affidavits. A trial court may not award summary judgment based on an assessment of the weight of the evidence, however. *Federal Ins. Co. v. Winters*, 354 S.W.3d 287, 291 (Tenn. 2011). Rather, under *Hannan*, summary judgment is appropriate only when the moving party establishes an affirmative defense or affirmatively negates an essential element of the plaintiff's claim. *Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1, 8 (Tenn. 2008). Thus, we must reverse summary judgment in favor of Ms. Shea and Shea Moskovitz on this ground.

We may affirm an award of summary judgment, however, on grounds that differ from those forming the basis of the trial court's decision. *Hill v. Lamberth*, 73 S.W.3d 131, 136 (Tenn. Ct. App. 2001). As noted above, in their answer, the Shea Moskovitz Defendants asserted the affirmative defense of the statute of limitations. For the reasons discussed above, we hold that summary judgment based on the one-year statute of limitations provided by Tennessee Code Annotated § 28-3-104(a)(2) is appropriate in this case.

### *Holding*

In light of the foregoing, we affirm summary judgment in favor of Defendants on the grounds that Ms. Pier commenced her action beyond the expiry of the one-year statute of limitations provided at Tennessee Code Annotated § 28-3-104(a)(2). In her brief, Ms. Pier asserts that the trial judge should have recused himself from this case where a legal malpractice action against him was resolved at approximately the same time that the current matter came before him. Ms. Pier acknowledges that she failed to raise this matter in the trial court, but asserts that she did not become aware of facts allegedly supporting recusal until more than thirty days after entry of the final judgment in this matter. We find it unnecessary to address this issue in light of our holding that Defendants were entitled to summary judgment as a matter of law. This matter is remanded to the trial court for enforcement of the judgment and the collection of costs. Costs on appeal are taxed to the Appellant, Francesca Maria Pier, and her surety, for which execution may issue if necessary.

_____
DAVID R. FARMER, JUDGE