IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
April 4, 2019 Session

## AMY ANGELL TUCKER ET AL. v. SANDRA JACKSON IVESON ET AL.

**Appeal from the Circuit Court for Davidson County**
**No. 11C-310  Hamilton V. Gayden, Jr., Judge**

———————————————————

**No. M2018-01501-COA-R3-CV**

———————————————————

A plaintiff who developed tendonitis after taking medication prescribed by a nurse practitioner filed a malpractice action against the nurse practitioner and the pharmacy that filled the prescription. Two years later, the plaintiff amended her complaint to add the nurse practitioner's employer and supervising physician as defendants. The new defendants moved to dismiss, arguing that the claims against them were barred by the applicable statutes of limitations and repose and that the plaintiff failed to provide them with pre-suit notice of a potential medical malpractice claim. The plaintiff responded that fraudulent concealment tolled the statutes and constituted extraordinary cause to waive pre-suit notice. The trial court agreed and denied the motions. The defendants then moved for summary judgment on other grounds, which the court granted. It is undisputed that the plaintiff's claims against these defendants were filed beyond the time allowed by the statute of repose for medical malpractice actions. Because we conclude that the plaintiff cannot establish an essential element of the fraudulent concealment exception, the defendants are entitled to judgment as a matter of law based on the statute of repose. So we affirm the dismissal of the claims against these defendants on summary judgment but on different grounds.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

W. NEAL MCBRAYER, J., delivered the opinion of the court, in which ANDY D. BENNETT and RICHARD H. DINKINS, JJ., joined.

Phillip L. Davidson, Brentwood, Tennessee, for the appellant, Sandra Jackson Iveson.

Joe Bednarz, Sr. and Joe Bednarz, Jr., Hendersonville, Tennessee, for the appellee, Amy Angell Tucker.

Edward A. Hadley and Brigham A. Dixson, Nashville, Tennessee, for the appellee, Middle Tennessee Ear, Nose & Throat, P.C.

Paige I. Bernick and Brian W. Holmes, Nashville, Tennessee, for the appellee, Phillip A. Newman.

Marc O. Dedman, Julie-Karel Elkin, and Lance W. Thompson, Nashville, Tennessee, for the appellee, Walgreen Company.


**OPINION**

**I.**

A.

On Christmas Eve 2009, Amy Angell Tucker,[1] was suffering from a bad cough, which she believed was caused by bronchitis. Her primary care physician's office was closed due to the holiday. And she was not interested in seeking treatment in a hospital emergency room.

Later that day, she mentioned her symptoms to a friend, Maresha Johnson. And Ms. Johnson suggested that her friend, Sandra Jackson Iveson, might be able to help. Nurse Iveson was employed as a nurse practitioner at Sun Medical Express Walk In Clinic in Hendersonville. But she was not scheduled to work that Christmas Eve. When she was contacted by Ms. Johnson, she was at a bank on personal business.

There is some dispute as to whether Ms. Tucker spoke directly with Nurse Iveson or her symptoms were relayed to Nurse Iveson through Ms. Johnson. In any event, after learning of Ms. Tucker's symptoms, Nurse Iveson wrote Ms. Tucker a prescription for an antibiotic, oral steroids, and an asthma inhaler. She wrote the prescription on a pre-printed prescription pad from the clinic and gave it to Ms. Johnson in the bank parking lot. Nurse Iveson had never met or treated Ms. Tucker previously. And she never personally examined Ms. Tucker before prescribing these medications.

Ms. Johnson delivered the prescription to a Walgreen's pharmacy to be filled. Ms. Tucker personally retrieved the medications from the pharmacy later that evening. According to Ms. Tucker, Nurse Iveson never told her that one potential side effect of the antibiotic was tendonitis or that the risk of tendonitis increased if the antibiotic was taken

---

[1] Both the plaintiff, Amy Tucker, and the defendant, Sandra Iveson, married during the course of this litigation. We will refer to these parties by their married names throughout this opinion.

with steroids. And neither did anyone in the pharmacy. After reading the package insert that accompanied the antibiotic, Ms. Tucker had the impression that the risk of tendonitis mentioned in the materials only applied to older patients. Believing she had no cause to be concerned, she took the medications as prescribed.

Within a few days, Ms. Tucker began experiencing arm and shoulder pain, symptoms of tendonitis. And on January 25, 2010, her physician informed her that the most likely cause of her condition was the medication prescribed by Nurse Iveson.

B.

On December 27, 2010, Ms. Tucker sent notice of a potential medical malpractice claim to Nurse Iveson and Dr. Burton Sanders, a licensed physician listed with the Tennessee Board of Nursing as Nurse Iveson's supervising physician. *See* Tenn. Code Ann. § 63-7-123(b)(1) (Supp. 2011).[2] But the information on file with the Board of Nursing was out of date. On December 24, 2009, Nurse Iveson's supervising physician was Dr. Phillip Newman.

Under the mistaken belief that Nurse Iveson was employed in a clinic at Kroger, on January 24, 2011, Ms. Tucker[3] sued "The Kroger Co." and "Walgreen's Co." Although the original complaint alleged that Nurse Iveson and Dr. Sanders violated the professional standard of care, they were not named as defendants.

In an amended complaint, filed the next day, Ms. Tucker dropped her suit against Kroger and added Nurse Iveson as a defendant. On February 17, 2011, Nurse Iveson denied liability and raised several affirmative defenses, including the fault of the plaintiff and other "person(s) and/or entities for whom Defendant [Iveson] is not responsible."

The next month, Ms. Tucker moved to amend the complaint yet again to add Dr. Sanders as a defendant. While the motion to amend was pending, Ms. Tucker's counsel discovered he was mistaken as to the identity of Nurse Iveson's supervising physician. So, on April 1, 2011, in a supplemental motion to amend, Ms. Tucker sought permission to add Dr. Newman as a party instead of Dr. Sanders. Acknowledging that

---

[2] When Ms. Tucker filed this action, nurse practitioners were required to file a notice with the Board of Nursing containing, among other things, "the name of the licensed physician having supervision, control and responsibility for prescriptive services rendered by the nurse practitioner." Tenn. Code Ann. § 63-7-123(b)(1) (Supp. 2011). Subsequent amendments to the statute changed this requirement so that the notice must now contain "the name of the licensed physician collaborating with the nurse practitioner who has control and responsibility for prescriptive services rendered by the nurse practitioner." *See* Tenn. Code Ann. § 63-7-123(b)(1) (Supp. 2019).

[3] Mr. Tucker joined in the original complaint as a plaintiff, but he was later dismissed.

3

the statute of limitations had run on her claims against Dr. Newman, Ms. Tucker claimed she was entitled to add Dr. Newman as a defendant under the ninety-day window afforded by the comparative fault statute. *See* Tenn. Code Ann. § 20-1-119(a)(1) (2009).

Ms. Tucker also sent Nurse Iveson an expedited set of requests for admissions seeking to verify this new information. *See* Tenn. R. Civ. P. 36. On April 13, she received Nurse Iveson's responses. Among other things, Nurse Iveson denied that she "was working for and utilizing prescription pads from Sun Medical Express Walk In Clinic on December 24, 2009." And she denied that Dr. Newman was her supervising physician that day. In reliance on Nurse Iveson's responses, Ms. Tucker only named Nurse Iveson and Walgreen Co. as defendants in the second amended complaint.

For reasons unclear from this record, Ms. Tucker voluntarily dismissed Nurse Iveson as a party in March 2012. With the litigation focused on the claims against Walgreen Co., Nurse Iveson was deposed. During her deposition, Nurse Iveson identified Sun Medical Express Walk In Clinic as her employer and Dr. Phillip Newman as her supervising physician when she prescribed medication to Ms. Tucker. And she acknowledged that her responses to the requests for admissions were false.

In December 2012, Ms. Tucker filed another motion to amend the complaint to add Dr. Newman as a defendant. She also asked the court to set aside its previous order dismissing Nurse Iveson. The court granted both requests.

On January 17, 2013, the third and final amended complaint was filed. For the first time, Ms. Tucker asserted claims against Dr. Newman and Middle Tennessee Ear Nose & Throat, P.C., the entity doing business as Sun Medical Express Walk In Clinic in 2009.[4] Nurse Iveson and Walgreen Co. were also named as defendants.

The third amended complaint asserted nearly identical claims against the two new defendants. According to allegations in the complaint, both Dr. Newman and Middle Tennessee ENT were directly negligent in: (1) failing to register Dr. Newman as Nurse Iveson's supervising physician with the Board of Nursing; (2) hiring Nurse Iveson without "reviewing her credentials, her history, or her pattern of practice"; (3) failing to properly supervise the nurse practitioner; and (4) allowing Nurse Iveson to prescribe these medications to Ms. Tucker. The complaint also alleged that Dr. Newman, as supervising physician, was vicariously liable for Nurse Iveson's negligence, and Middle Tennessee ENT, as employer, was vicariously liable for the negligence of both Nurse Iveson and Dr. Newman.

---

[4] Middle Tennessee ENT sold the clinics in 2012.

4

Dr. Newman and Middle Tennessee ENT filed motions to dismiss, arguing that the claims against them were untimely and in violation of the pre-suit notice provisions of the Tennessee Medical Malpractice Act.[5] *See* Tenn. Code Ann. §§ 29-26-116, -121(a)(1) (2000 & Supp. 2010). Ms. Tucker responded that Nurse Iveson's fraudulent concealment of the identities of these defendants had tolled the running of the statutes of limitations and repose and constituted extraordinary cause to waive pre-suit notice.

Because Ms. Tucker filed material outside the pleadings in response to the motions, the court converted the motions to motions for summary judgment and gave the parties time to submit additional materials.[6] *See* Tenn. R. Civ. P. 12.02. The trial court denied the motions based on evidence of fraudulent concealment by Nurse Iveson.

C.

Dr. Newman and Middle Tennessee ENT then moved for summary judgment on the merits. They primarily argued that they were entitled to a judgment as a matter of law because Ms. Tucker could not establish that Nurse Iveson was acting in the course and scope of her employment when she wrote the prescription for Ms. Tucker. In support of their motions, they submitted statements of undisputed material facts and deposition testimony from multiple witnesses. Ms. Tucker relied on additional deposition testimony to show that numerous disputed facts precluded the grant of summary judgment. After hearing oral argument, the court took the matter under advisement.

Meanwhile, Walgreen Co. filed its own motion for summary judgment. Ms. Tucker responded to the new motion. And she also filed a late supplemental response to the motions that were under advisement, including an affidavit from Jack Uhrig, M.D. Nurse Iveson also filed her own affidavit in opposition to the motions for summary judgment.

Middle Tennessee ENT and Dr. Newman moved to strike the late-filed affidavits. Rather than focus on timeliness, the court rejected Dr. Uhrig's affidavit for substantive reasons. *See* Tenn. Code Ann. § 29-26-115(b) (Supp. 2010); Tenn. R. Evid. 703. And the court determined that Nurse Iveson's affidavit failed to create a genuine issue of material fact with respect to the issues raised in the motions for summary judgment filed by Dr. Newman and Middle Tennessee ENT.

---

[5] This case is governed by the Tennessee Medical Malpractice Act, the predecessor to our current Health Care Liability Act. *See generally Ellithorpe v. Weismark*, 479 S.W.3d 818, 824-26 (Tenn. 2015) (discussing differences between the current act and its predecessor).

[6] Sadly, while the motions to dismiss were pending, one of Ms. Tucker's attorneys passed away and the other experienced significant health issues, forcing him to withdraw from the litigation.

The court granted summary judgment to Middle Tennessee ENT and Dr. Newman and certified the orders as final judgments. *See* Tenn. R. Civ. P. 54.02. The court found that Nurse Iveson was not acting in the course and scope of employment when she treated Ms. Tucker. So as a matter of law, her employer and supervising physician could not be held vicariously liable for her actions. For this same reason, these defendants could not be held liable for negligent hiring or supervision. Alternatively, the court ruled that Ms. Tucker's claims for negligent hiring and supervision must be dismissed because she failed to come forward with competent expert proof, as required by the Medical Malpractice Act.

In a separate order, the court also granted partial summary judgment to Walgreen Co. Unlike the summary judgment orders pertaining to the other defendants, the court did not certify the Walgreen order as a final judgment under Rule 54.02.

**II.**

Nurse Iveson, Ms. Tucker, Dr. Newman, and Middle Tennessee ENT all raise multiple issues on appeal. Ms. Tucker's issues primarily concern the trial court's grant of summary judgment to Dr. Newman and Middle Tennessee ENT on the scope of employment.[7] Nurse Iveson challenges the court's decision on the motion to strike her affidavit. Dr. Newman and Middle Tennessee ENT contend the trial court erred in denying their motions to dismiss. Because our resolution of this last issue is dispositive, we begin with the trial court's denial of the motions to dismiss.

A.

Dr. Newman and Middle Tennessee ENT sought dismissal on multiple grounds, including the timeliness of the third amended complaint. Because the trial court considered materials outside the pleadings in its ruling, the motions to dismiss were converted to motions for summary judgment. *See* Tenn. R. Civ. P. 12.02. So we review the court's decision using the standards applicable to summary judgments.

Summary judgment may be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a

---

[7] Ms. Tucker also raised as an issue on appeal the propriety of the court's grant of partial summary judgment to Walgreen Co. Except for limited circumstances not applicable here, this Court only has subject matter jurisdiction over final judgments. *Bayberry Assocs. v. Jones*, 783 S.W.2d 553, 559 (Tenn. 1990). Generally, a final judgment is a judgment "that resolves all of the parties' claims and leaves the court with nothing to adjudicate." *Ball v. McDowell*, 288 S.W.3d 833, 836-37 (Tenn. 2009). An order that resolves fewer than all the claims between all the parties is not a final judgment. Tenn. R. App. P. 3(a); *In re Estate of Henderson*, 121 S.W.3d 643, 645 (Tenn. 2003). So this issue is not properly before us.

judgment as a matter of law." Tenn. R. Civ. P. 56.04. The party moving for summary judgment has "the burden of persuading the court that no genuine and material factual issues exist and that it is, therefore, entitled to judgment as a matter of law." *Byrd v. Hall*, 847 S.W.2d 208, 211 (Tenn. 1993). If the moving party satisfies its burden, "the nonmoving party must then demonstrate, by affidavits or discovery materials, that there is a genuine, material fact dispute to warrant a trial." *Id.*

Statutes of limitations and repose are affirmative defenses. *See* Tenn. R. Civ. P. 8.03. The party asserting an affirmative defense has the burden of establishing all of its elements. *Carr v. Borchers*, 815 S.W.2d 528, 532 (Tenn. Ct. App. 1991). Satisfying this burden requires more than a "conclusory assertion that summary judgment is appropriate," rather the movant must set forth specific material facts as to which the movant contends there is no dispute. *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 264 (Tenn. 2015).

If a motion for summary judgment is properly supported, the nonmoving party must then come forward with something more than the allegations or denials of its pleadings. *Id.* at 265. The nonmoving party must "by affidavits or one of the other means provided in Tennessee Rule 56, 'set forth specific facts' *at the summary judgment stage* 'showing that there is a genuine issue for trial.'" *Id.* (quoting Tenn. R. Civ. P. 56.06).

A trial court's decision on a motion for summary judgment enjoys no presumption of correctness on appeal. *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 84 (Tenn. 2008); *Blair v. W. Town Mall,* 130 S.W.3d 761, 763 (Tenn. 2004). We review the summary judgment decision as a question of law. *Martin*, 271 S.W.3d at 84; *Blair*, 130 S.W.3d at 763. So we must review the record de novo and make a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been met. *Eadie v. Complete Co.*, 142 S.W.3d 288, 291 (Tenn. 2004); *Blair*, 130 S.W.3d at 763.

B.

As an initial matter, Ms. Tucker argues that her negligent hiring and supervision claims are not governed by the Medical Malpractice Act. The Medical Malpractice Act left to the courts the task of determining whether a plaintiff's claims against a health care provider involved medical malpractice or ordinary negligence. *Ellithorpe*, 479 S.W.3d at 825. The Medical Malpractice Act only applies to "those alleged acts that bear a substantial relationship to the rendition of medical treatment by a medical professional, or concern medical art or science, training, or expertise." *Estate of French v. Stratford House*, 333 S.W.3d 546, 557 (Tenn. 2011), *superceded by statute*, Tennessee Civil Justice Act of 2011, 2011 Tenn. Pub. Acts 1505. Other acts or omissions that "do not bear a substantial relationship to medical treatment," or "require no specialized skills" are

ordinary negligence claims that can be assessed by the trier of fact based on everyday experience. *Id.*

We conclude that Ms. Tucker's negligent hiring and supervision claims are substantially related to medical treatment or expertise. The negligent hiring and supervision claims implicate Middle Tennessee ENT's duty to ensure that its patients receive quality care from competent medical practitioners. *See Wicks v. Vanderbilt Univ.*, No. M2006-00613-COA-R3-CV, 2007 WL 858780, at *13 (Tenn. Ct. App. Mar. 21, 2007). And the claim that Dr. Newman failed in his duty to properly supervise Nurse Iveson requires evaluation of his medical judgment. *See Watkins v. Affiliated Internists, P.C.*, No. M2011-00541-COA-R3-CV, 2012 WL 4086139, at *6 (Tenn. Ct. App. Sept. 17, 2012).

## C.

The Medical Malpractice Act "places an absolute three-year limit upon the time within which malpractice actions can be brought." *Cronin v. Howe*, 906 S.W.2d 910, 913 (Tenn. 1995). This outer limit was intended "to provide certainty as to the time period during which a physician could be subject to potential liability." *Id.* The relevant statutory language provides: "In no event shall any such action be brought more than three (3) years after the date on which the negligent act or omission occurred except where there is fraudulent concealment on the part of the defendant, in which case the action shall be commenced within one (1) year after discovery that the cause of action exists." Tenn. Code Ann. § 29-26-116(a)(3) (2000).

So while the statute of limitations does not begin to run until the plaintiff's cause of action has accrued, the same cannot be said for the statute of repose. *Calaway ex rel. Calaway v. Schucker*, 193 S.W.3d 509, 515 (Tenn. 2005), *amended on grant of reh'g*, (Tenn. 2006). The statute of repose extinguishes both "undiscovered causes of action which have yet to accrue" and "accrued and vested rights of action." *Mills v. Wong*, 155 S.W.3d 916, 925 (Tenn. 2005). The key event for the statute of repose is the date of the negligent act. Tenn. Code Ann. § 29-26-116(a)(3) (2000).

Here, any alleged negligence occurred, at the latest, by December 24, 2009. And Ms. Tucker did not file her malpractice action against these defendants until January 17, 2013, more than three years later. So the defendants established their statute of repose defense. The burden of proof then shifted to Ms. Tucker to establish an exception. *Robinson v. Baptist Mem'l Hosp.*, 464 S.W.3d 599, 611 (Tenn. Ct. App. 2014).

Exceptions to a statute of repose must clearly appear in the statute itself or in another statute that specifically references the statute of repose. *Calaway*, 193 S.W.3d at 516. The statute of repose for malpractice actions includes an exception within the statute itself—fraudulent concealment by the defendant. *Id.*

8

But the fraudulent concealment exception cannot apply unless Ms. Tucker can establish that: (1) the defendants took affirmative action to conceal their identities; (2) she could not have discovered their identities in the exercise of reasonable care and diligence; (3) the defendants knew about the facts giving rise to Ms. Tucker's cause of action and the identity of the wrongdoer; and (4) the defendants concealed material information by withholding information or resorting to trickery. *See Shadrick v. Coker*, 963 S.W.2d 726, 735-36 (Tenn. 1998) (discussing the elements of the fraudulent concealment exception to the statute of repose); *see also Redwing v. Catholic Bishop for Diocese of Memphis*, 363 S.W.3d 436, 462 (Tenn. 2012) (discussing fraudulent concealment in the context of the statute of limitations).

Viewing the facts in the record in Ms. Tucker's favor, a reasonable juror could find that Nurse Iveson failed to update her information on file with the Board of Nursing and provided false and misleading information in response to Ms. Tucker's requests for admission. And Ms. Tucker did not discover the fraudulent concealment until December 2012.

Even so, one essential element of the fraudulent concealment exception is missing here. The defendants must have been "aware of the wrong." *See Shadrick*, 963 S.W.2d at 735. And Ms. Tucker failed to come forward with proof of actual knowledge or any other evidence from which a reasonable juror could infer actual knowledge. *See Pero's Steak & Spaghetti House v. Lee*, 90 S.W.3d 614, 625 (Tenn. 2002) ("Fraudulent concealment requires proof of actual knowledge."); *Shadrick*, 963 S.W.2d at 737 (finding that actual knowledge could be inferred from proof in the record). Nurse Iveson never informed Dr. Newman or Middle Tennessee ENT that she had written this prescription for Ms. Tucker. And neither defendant was aware of this malpractice action until they were served with process in 2013. Having no knowledge of a wrongful act or their potential liability, they had nothing to conceal. *See Givens v. Josovitz*, 343 S.W.3d 76, 82 (Tenn. Ct. App. 2010) ("One cannot conceal what one does not know.") (quoting *Tigrett v. Linn*, No. W2009-00205-COA-R9-CV, 2010 WL 1240745, at *8 (Tenn. Ct. App. Mar. 31, 2010)).

Based on the undisputed facts, we conclude that Ms. Tucker's claims against these defendants are barred by the statute of repose. Fraudulent concealment does not apply. We affirm the trial court's grant of summary judgment in favor of these defendants, but on different grounds than those relied on by the trial court.[8] *See Pier v. Jungkind*, 427 S.W.3d 922, 930 (Tenn. Ct. App. 2013).

---

[8] Our decision on the statute of repose makes it unnecessary to address the remaining issues on appeal.

9

**III.**

Because Ms. Tucker filed her malpractice action against Dr. Newman and Middle Tennessee ENT more than three years after the negligent act occurred, her claims are barred by the statute of repose. And undisputed facts show that she cannot establish all the elements of fraudulent concealment. So we affirm the trial court's grant of summary judgment to Dr. Newman and Middle Tennessee ENT, albeit on different grounds. This case is remanded to the trial court for further proceedings consistent with this opinion.

_____
W. NEAL MCBRAYER, JUDGE